1  **COWAN, LIEBOWITZ & LATMAN, P.C.**
   KIERAN G. DOYLE (admitted pro hac vice)
2      kgd@cll.com
   JOELLE A. MILOV (admitted pro hac vice)
3      jam@cll.com
   JEREMY A. BERMAN (admitted pro hac vice)
4      jab@cll.com
   114 West 47th Street, 21st Floor
5  New York, NY 10036-1525
   Telephone: 212-790-9261
6  Facsimile:  212-575-0671

7  [Additional Counsel on Following Page]

8

9             UNITED STATES DISTRICT COURT

10          FOR THE CENTRAL DISTRICT OF CALIFORNIA

11             SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| 12  IMEX LEADER, INC., a California corporation; and IRINA GRANT, | Case No. 8:22-cv-01432-FWS-JDE |
| 13 | Honorable Fred W. Slaughter |
| 14            Plaintiffs, | |
| 15     vs. | **REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS AND STRIKE** |
| 16  ZEST US WHOLESALE, INC., a California corporation; ZEST US, a California corporation; ADIL AL HOURANI, an individual; OMAR AL HOURANI, an individual; KGR DISTRIBUTION CORP., a New Jersey corporation; and RAVI KOMMI, an individual; SHIMS BARGAIN, INC., a California corporation, doing business as JC SALES; and DOES 1 through 100, inclusive, | Date:    January 12, 2023<br>Time:    10:00 a.m.<br>Courtroom:  10D |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21            Defendants. | |
| 22 | |

23

24

25

26

27

28

32752/000/4239044.5                    REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

**JASSY VICK CAROLAN** LLP
JEAN-PAUL JASSY, Cal Bar No. 220513
 jpjassy@jassyvick.com
JEFFREY A. PAYNE, Cal. Bar No. 279034
 jpayne@jassyvick.com
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071
Telephone: 310-870-7048
Facsimile:  310-870-7010

Attorneys for Defendants
ZEST US WHOLESALE, INC.; ZEST US;
ADIL AL HOURANI; OMAR AL
HOURANI; KGR DISTRIBUTION CORP.;
and RAVI KOMMI; SHIMS BARGAIN, INC.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................... 1

I. ARGUMENT ................................................................................................ 1

    A. THE TRADE DRESS CLAIMS SHOULD BE DISMISSED ................. 1

        i. Plaintiffs' Trade Dress is Properly Characterized as Product Configuration ................................................................................. 1

        ii. Plaintiffs' Trade Dress Claim is Insufficiently Articulated ............ 2

        iii. Plaintiffs Do Not Sufficiently Allege Distinctiveness ................... 3

            a. Plaintiffs' Trade Dress is Not Inherently Distinctive .......... 3

            b. Plaintiffs Have Failed to Sufficiently Allege Secondary Meaning ............................................................................... 6

        iv. Plaintiffs Do Not Allege that Their Trade Dress is Not Functional ........................................................................................ 7

    B. THE WORD MARK CLAIMS SHOULD BE DISMISSED .................. 7

    C. THE COPYRIGHT CLAIM SHOULD BE DISMISSED ...................... 8

    D. DEFENDANTS' MOTION TO STRIKE SHOULD BE GRANTED ........................................................................................... 10

II. CONCLUSION ........................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*,
  537 F.2d 4 (2d Cir. 1976) ................................................................................... 4

*Cisco Sys. v. Capella Photonics, Inc.*,
  No. 20-cv-1858, 2020 U.S. Dist. LEXIS 152315 (N.D. Cal. Aug. 21, 2020) ............... 8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ........................................................................................... 3

*In re DNI Holdings Ltd.*,
  77 U.S.P.Q.2d 1435 (T.T.A.B. 2005) ................................................................. 5

*Gallo v. Proximo Spirits, Inc.*,
  No. 10-cv-411, 2012 U.S. Dist. LEXIS 10669 (E.D. Cal. Jan. 27, 2012) ................. 6

*Hot Focus Inc. v. Best Access Grp. LLC*,
  No. 22-cv-14, 2022 U.S. Dist. LEXIS 137015 (C.D. Cal. June 23, 2022) ............. 5, 6

*Imex Leader, Inc. v. East Star Wholesale, Inc.*,
  No. 21-cv-2037 (S.D. Cal.) ............................................................................... 1

*Imex Leader, Inc. v. Full Charge LLC*,
  No. 20-cv-01574 (C.D. Cal.) ............................................................................. 1

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
  113 F.3d 373 (2d Cir. 1997) .............................................................................. 3

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.*,
  454 F.3d 108 (2d Cir. 2006) .............................................................................. 4

*Mana Prods. v. Columbia Cosmetics Mfg.*,
  65 F.3d 1063 (2d Cir. 1995) .............................................................................. 5

*Milkcrate Ath., Inc. v. Adidas Am., Inc.*,
  No. 21-cv-09328, 2022 U.S. Dist. LEXIS 152654 (C.D. Cal. Aug. 4, 2022) ........... 10

*P&P Imps. LLC v. Johnson Enters., LLC*,
  46 F.4th 953 (9th Cir. Aug. 24, 2022) ................................................................. 7

*Pretty in Plastic, Inc. v. Bunn*,
  793 Fed. Appx. 593 (9th Cir. 2020) ............................................................... 8, 10

*Profade Apparel, LLC v. Rd. Runner Sports, Inc.*,
   No. 18-cv-1254, 2020 U.S. Dist. LEXIS 160173 (S.D. Cal. Sept. 2, 2020) .................. 7

*R and A Synergy LLC v. Spanx, Inc.*,
   No. 17-cv-09147, 2019 U.S. Dist. LEXIS 168266 (C.D. Cal. May 1, 2019) ................ 6

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) ................................................................................ 8, 10

*Salt Optics, Inc. v. Jand, Inc.*,
   No. 10-cv-0828, 2010 U.S. Dist. LEXIS 131388 (C.D. Cal. Nov. 19, 2010) .............. 9

*Schneider v. California Dep't of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) ..................................................................................... 7

*Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*,
   568 F.2d 1342 (C.C.P.A. 1977) ............................................................................... 4, 5

*In re Slokevage*,
   441 F.3d 957 (Fed. Cir. 2006) ..................................................................................... 2

*Solofill v. Rivera*,
   No. 17-cv-02956, 2018 U.S. Dist. LEXIS 239674 (C.D. Cal. Aug. 3, 2018) ............. 4

*Trovan, Ltd. v. Pfizer, Inc.*,
   No. 98-cv-0094, 2000 U.S. Dist. LEXIS 7522 (C.D. Cal. May 25, 2000) ................ 10

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
   529 U.S. 205 (2000) ................................................................................................ 1, 2

*Walker & Zanger, Inc. v. Paragon, Indus.*,
   549 F. Supp. 2d 1168 (N.D. Cal. 2007) ...................................................................... 3

**Statutes**

Lanham Act ..................................................................................................................... 1, 3

**Other Authorities**

Fed. R. Civ. P. 12(f) .......................................................................................................... 10

J.T. MCCARTHY, MCCARTHY ON UNFAIR COMPETITION (5th ed. 2022) .................... 4, 5, 6

# INTRODUCTION

Plaintiffs spend much of their opposition claiming that they are not seeking to protect the idea of an anthropomorphic egg-shaped container containing candy and a toy, but their actions and their pleading tell a different story. The instant complaint against Defendants is the third complaint in just two years that Plaintiffs have brought against competing egg-shaped products. *See* Second Request for Judicial Notice ("SRJN"), Exs. D-E (complaints in *Imex Leader, Inc. v. Full Charge LLC*, No. 20-cv-01574 (C.D. Cal.) and *Imex Leader, Inc. v. East Star Wholesale, Inc.*, No. 21-cv-2037 (S.D. Cal.)). In each case, the story is the same: defendants are former distributors of Plaintiffs' products that pivoted away to sell their own goods only to face a lawsuit bringing Lanham Act claims against defendants for their competing egg products.

It is against this backdrop that Plaintiffs' prolix complaint should be viewed. Rather than seeking to fairly compete with Defendants in the marketplace, Plaintiffs once again seek exclusivity through litigation. Because Plaintiffs' gauzy allegations against Defendants fail to state trade dress, trademark, copyright, or relevant state law claims, Defendants' motions to dismiss and to strike should be granted.

## I.  ARGUMENT

### A.  THE TRADE DRESS CLAIMS SHOULD BE DISMISSED

#### i.  Plaintiffs' Trade Dress is Properly Characterized as Product Configuration

Plaintiffs' arguments in opposition to the motion to dismiss their trade dress claims are premised on a central mischaracterization: that the claimed trade dress amounts to product packaging and is inherently distinctive. Opp. Br. at 15. However, as made clear by the Supreme Court in *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205 (2000), the trade dress at issue here is correctly classified as product configuration, which can never be inherently distinctive and can only be protected upon a showing of secondary meaning. *Id.* at 212.

1      In *Samara*, the Court differentiated between product configuration and product
2  packaging by noting that

> a classic glass Coca-Cola bottle . . . may constitute packaging for those
> consumers who drink the Coke and then discard the bottle, but may constitute
> the product itself for those consumers who are bottle collectors, or part of the
> product itself for those consumers who buy Coke in the classic glass bottle,
> rather than a can, because they think it more stylish to drink from the former.

*Id.* at 215. It also issued an admonition: "[t]o the extent there are close cases, we believe that courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning." *Id.*; *see also In re Slokevage*, 441 F.3d 957, 962 (Fed. Cir. 2006).

Here, Plaintiffs' decorated plastic eggs are more than mere packaging for candy and toys. The eggs are as much a part of the product as the candy and the toys they contain. In fact, Plaintiffs describe their plastic eggs as "collectibles," not as disposable elements intended only to deliver candy and toys. *E.g.*, Compl. ¶ 17 ("The suites of characters are designed to be collectibles. . . . Imex develops six to 16 characters or stories inside each suite, so that complex suites may be sold as a unit to collectors inside Imex's custom display boxes."). Plaintiffs tell parents, "[y]our child can collect all 12 eggs with characters for each brand and enjoy them for years to come." RJN, Ex. C. As such, the plastic egg trade dress at issue is akin to the collectors' view of the classic glass Coca-Cola bottles discussed in *Samara* and thus constitute product configuration trade dress. Moreover, as instructed by the Supreme Court, to the extent the Court finds this to be a close case, it "should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning." *Samara*, 529 U.S. at 215.

      **ii.**      **Plaintiffs' Trade Dress Claim is Insufficiently Articulated**

Plaintiffs' complaint described the alleged trade dress as "consist[ing] of the Registered Word Marks, the Registered Design Marks, the Registered Copyrighted

Works, and the Unregistered Trade Dress and Trademarks." Compl. ¶ 37.[1] Plaintiffs also claim that their trade dress "consists of suites of original characters and stories depicted on egg-shaped containers." Opp. at 12 (citing Compl. ¶ 17). But such descriptions fail to provide any meaningful guidance as to what is claimed as protectable by Plaintiffs. Surely Plaintiffs cannot claim rights in all suites of characters, "cute animal characters," "cute monster characters," or "cute characters based on emojis," but they have failed to provide any greater specificity as to what they do claim. Compl. ¶ 17.

"[A] plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality . . . ." *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997). Moreover, as described in Defendants' moving papers, the pleading standard for product configuration trade dress cases is even higher due to "an acute risk of stifling competition," a key concern in this case, as noted above. *Walker & Zanger, Inc. v. Paragon, Indus.*, 549 F. Supp. 2d 1168, 1174 (N.D. Cal. 2007); Mov. Mem. at 9. Because Plaintiffs have failed to sufficiently describe their trade dress, the Court should dismiss their trade claims.[2]

### iii. Plaintiffs Do Not Sufficiently Allege Distinctiveness

#### a. Plaintiffs' Trade Dress is Not Inherently Distinctive

Even if the Court determines that Plaintiffs' trade dress should be characterized as packaging rather than product configuration, Plaintiffs have failed to allege that

---

[1] Plaintiffs misinterpret Defendants' preemption argument. Defendants do not argue that Plaintiffs' standalone copyright claim must be dismissed on the basis of preemption. Instead, Defendants assert that Plaintiffs cannot define the trade dress to expand protection for their copyrighted works. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) (citation omitted) ("in construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright.").

[2] Plaintiffs claim that their claims must be sufficiently pleaded because a similar complaint against different defendants was not dismissed. *See, e.g.*, Opp. at 12. Of course, every complaint and motion is *sui generis*.

1  their trade dress is inherently distinctive. As an initial matter, Plaintiffs set forth the
2  incorrect test in determining whether product packaging is inherently distinctive. The
3  continuum of marks put forth in *Abercrombie & Fitch Co. v. Hunting World, Inc.*,
4  537 F.2d 4 (2d Cir. 1976), categorizing marks as generic, descriptive, suggestive,
5  arbitrary, or fanciful "was specifically developed for word marks and does not
6  translate into the world of shapes and designs." J.T. MCCARTHY, MCCARTHY ON
7  UNFAIR COMPETITION (5th ed. 2022) ("McCarthy") § 8.13. Instead, "[w]hen
8  considering the distinctiveness of a non-verbal trademark or trade dress, courts more
9  frequently apply the *Seabrook* [*Foods, Inc. v. Bar-Well Foods Ltd.*] test in lieu of the
10 traditional spectrum of distinctiveness applied to word marks." *Solofill v. Rivera*, No.
11 17-cv-02956, 2018 U.S. Dist. LEXIS 239674, at *8-9 (C.D. Cal. Aug. 3, 2018).
12 Under that test, a court looks at

> whether (1) the claimed design or shape is a common, basic shape or design,
> (2) the trade dress is unique or unusual in a particular field, or (3) the trade
> dress is a mere refinement of a commonly adopted and well-known form of
> ornamentation for a particular class of goods which consumers view more as
> ornamentation.

*Id.* at *9 (citing *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342, 1344
(C.C.P.A. 1977)). "[A]ll three questions are merely different ways to ask whether the
design, shape or combination of elements is so unique, unusual or unexpected in this
market that one can assume without proof that it will automatically be perceived by
customers as an indicator of origin—a trademark." McCarthy § 8:13.

Applying the *Seabrook* test to the complaint, Plaintiffs have failed to plead
facts showing that its trade dress is inherently distinctive. First, the claimed design—
decorative egg-shapes—is a common shape that is not inherently distinctive. *See
Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006)
("Basic geometric shapes . . . are not protectable as inherently distinctive.");
*Seabrook*, 568 F.2d at 1345-46 (oval design not inherently distinctive). Further,

Plaintiffs have not averred facts to suggest that their trade dress is "unique or unusual." *See, e.g.*, *Hot Focus Inc. v. Best Access Grp. LLC*, No. 22-cv-14, 2022 U.S. Dist. LEXIS 137015, at *16 (C.D. Cal. June 23, 2022); *see also Mana Prods. v. Columbia Cosmetics Mfg.*, 65 F.3d 1063, 1070 (2d Cir. 1995) (makeup compacts' size and shape common to makeup compacts and not inherently distinctive). Indeed, Plaintiffs' own website indicates that its trade dress is "a mere refinement of a commonly adopted and well-known form of ornamentation," as it describes its mission as building upon others' surprise eggs. *See Seabrook*, 568 F.2d at 1344; RJN, Ex. C ("Egg surprises have long been a favorite of children all over the world[,] [f]rom plastic eggs filled with candy to candy eggs filled with surprise toys . . . . Eggs Time decided that it was important to take this long-time tradition of surprise eggs and turn it into an experience that also includes learning, love, connection, and even nutrition.").

To the extent Plaintiffs claim that their registered word marks appearing on the outside of the containers are arbitrary and thus contribute to the distinctiveness of their alleged trade dress, they are wrong. Opp. at 15. The only overlapping word between those marks and Defendants is the use of the words "Egg" or "Eggs," both of which were disclaimed or appear in marks registered by Imex on the Supplemental Register, and therefore serve as acknowledgments that those marks are ***not*** inherently distinctive. *See In re DNI Holdings Ltd.*, 77 U.S.P.Q.2d 1435, 1442 (T.T.A.B. 2005); McCarthy § 19:43 ("[A]n unconditional amendment of an application for registration on the Principal Registrat[er] to become an application for the Supplemental Register is a concession that the term is not inherently distinctive."). Nor can Plaintiffs rely on their registered design marks,[3] most of which are on the Supplemental Register, to

---

[3] Plaintiffs' purported design mark infringement claims were pleaded so unclearly that it appeared they were invoking such marks only as part of their trade dress claim. To the extent they are now indicating that they have made a freestanding infringement claim, such claims must be dismissed as insufficiently clear.

prove inherent distinctiveness in its trade dress. *See* McCarthy § 19:43. But, even if these design marks were themselves distinctive, they only constitute a portion of Plaintiffs' pleaded trade dress, and therefore are not sufficient to establish inherent distinctiveness of the trade dress as a whole. *See Gallo v. Proximo Spirits, Inc.*, No. 10-cv-411, 2012 U.S. Dist. LEXIS 10669, at *31-32 (E.D. Cal. Jan. 27, 2012) (finding that incontestable status of design mark did not show that dress was inherently distinctive because it was only one portion of claimed trade dress).

### b. Plaintiffs Have Failed to Sufficiently Allege Secondary Meaning

Plaintiffs have not pleaded facts, as opposed to conclusory allegations, that their trade dress has secondary meaning. *See* Mov. Mem. 12-15. For example, allegations about the sales or promotion of Imex Products do not equate to allegations about the sales or promotion attributable to the Imex Trade Dress. *E.g.*, *id.* ¶¶ 19, 21. For example, it is plausible that "[t]he Imex Products are popular with children and their parents," not due to the Imex Trade Dress, but due to the location of the products in the stores, the taste of the candy, the inclusion of vitamins in certain Imex Products, or the appeal of the toys contained in the eggs. *See id.* ¶¶ 18-19; *R and A Synergy LLC v. Spanx, Inc.*, No. 17-cv-09147, 2019 U.S. Dist. LEXIS 168266, at *24 (C.D. Cal. May 1, 2019) (citation and internal quotation marks omitted) ("The test of secondary meaning is the effectiveness of the effort to create it, not merely the effort to sell the product generally"). Finally, Plaintiffs claim they sufficiently alleged secondary meaning because they alleged deliberate copying. "However, allegations of deliberate copying, without more, are insufficient to support an inference of secondary meaning." *Hot Focus*, 2022 U.S. Dist. LEXIS 137015, at *19.

Because Plaintiffs failed to sufficiently allege inherent or acquired distinctiveness, Plaintiffs' trade dress claims must be dismissed.

### iv. Plaintiffs Do Not Allege that Their Trade Dress is Not Functional

Plaintiffs' complaint also fails to allege that the trade dress is not functional, a threshold requirement for any trade dress pleading. *See P&P Imps. LLC v. Johnson Enters., LLC*, 46 F.4th 953, 958 (9th Cir. Aug. 24, 2022). The only allegation in the complaint that speaks to functionality is entirely conclusory. *See* Compl. ¶ 130 ("The Imex Trade Dress is distinctive and nonfunctional."); *see, e.g., Profade Apparel, LLC v. Rd. Runner Sports, Inc.*, No. 18-cv-1254, 2020 U.S. Dist. LEXIS 160173, at *14-15 (S.D. Cal. Sept. 2, 2020) (granting motion to dismiss trade dress claim when plaintiff, *inter alia*, failed to allege facts supporting claim that trade dress was not functional). While Plaintiffs attempt to cure this deficit in their opposition papers by claiming their trade dress and elements thereof are non-functional, and that "[n]one of these items is essential to product use or affects cost or quality," these allegations are not in the Complaint. Arguments made in opposition to a motion cannot serve to amend Plaintiffs' extant complaint. *See Schneider v. California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). As such, Plaintiffs' trade dress claims should be dismissed.

### B. THE WORD MARK CLAIMS SHOULD BE DISMISSED

As noted above, Plaintiffs' Complaint alleges that their trade dress consists of a number of elements including the Registered Word Marks. Compl. ¶ 37. In response, Defendants moved to dismiss Plaintiffs' word mark claims, noting that the only overlapping words with Defendants marks were the words "EGG" and "EGGS." Mov. Mem. at 5-6; RJN, Ex. A. Plaintiffs now claim that they never intended to allege that Defendants' marks infringed Plaintiffs' Registered Word Marks, per se, but that the Complaint alleges that Defendants infringed Plaintiffs' marks by using Imex's display boxes to sell Defendants' products. The Complaint, however, does not allege, and therefore provides no notice to Defendants, which word marks were shown on such display boxes.

1        Moreover, the Complaint fails to sufficiently allege that Defendants infringed
2   Plaintiffs' word marks based on the use of Plaintiff's display racks.  In fact, an
3   exhibit to the Complaint tends to contradict any such assertion.  *See Cisco Sys. v.*
4   *Capella Photonics, Inc.*, No. 20-cv-1858, 2020 U.S. Dist. LEXIS 152315, at *7 (N.D.
5   Cal. Aug. 21, 2020) (citation and internal quotation marks omitted) ("[W]hen a
6   written instrument contradicts allegations in a complaint to which it is attached, the
7   exhibit trumps the allegations.").  Exhibit K to the Complaint purports to show
8   Defendants' MR. EGG product in an Imex display case.  As an initial matter, the
9   picture of the Imex Display case shows no Registered Word Marks in full, and only
10  shows the word "EGG" at the top of the display.  Moreover, there are no allegations
11  that Defendants caused Imex's packaging to be used to display Defendants' goods.
12  Indeed, the sign attached to the front "weekly grocery special" regarding KING EGG
13  indicates that the grocery store may be responsible for the display of the goods in this
14  manner.  The lack of any allegation indicating that Defendants are responsible for
15  infringement of unspecified word marks is fatal to Plaintiffs' infringement claim and
16  contrasts with allegations Plaintiffs have made in the past against other defendants.
17  *See* SRJN, Ex. D. at ¶¶ 35-36 (amended complaint alleging that defendants, as
18  plaintiff's distributor, secured shelf space from retailers, and used Imex boxes and
19  racks, filled with defendants and plaintiff's products, and held them out as all being
20  Imex products).

21        **C.    THE COPYRIGHT CLAIM SHOULD BE DISMISSED**

22        Plaintiffs incorrectly claim that district courts cannot dismiss copyright claims
23  concerning artwork and design at the pleadings stage.  To the contrary, the Ninth
24  Circuit has made clear that courts may apply the extrinsic test on a motion to dismiss.
25  *See Pretty in Plastic, Inc. v. Bunn*, 793 Fed. Appx. 593, 594 (9th Cir. 2020) (affirming
26  dismissal of claim concerning unicorn depiction); *Rentmeester v. Nike, Inc.*, 883 F.3d
27  1111, 1118 (9th Cir. 2018) (affirming dismissal of copyright claim concerning
28

photography).  Because Plaintiffs have failed to plead substantial similarity as a matter of law, the Court should dismiss the copyright claim.

Defendants' moving memorandum noted how Plaintiffs failed to identify the protectable elements of their designs.  In opposition, Plaintiffs claim that Paragraphs 55 to 78 of their Complaint "extensively describe[] the substantial similarities" between the parties' works.  Opp. at 21.  But while these paragraphs may compare various elements of the parties' respective designs, they never identify which elements of their designs Plaintiffs are claiming as protectable under copyright.  *See Salt Optics, Inc. v. Jand, Inc.*, No. 10-cv-0828, 2010 U.S. Dist. LEXIS 131388, at *18-19 (C.D. Cal. Nov. 19, 2010) ("While the FAC describes several elements of the Salt Website in the 'Factual Allegations' section, it is unclear whether these descriptions are meant to support Plaintiff's trade dress claims or Plaintiff's copyright claims.").  Moreover, even a cursory review of these paragraphs shows why they fail to sufficiently allege substantial similarity.  For example, Plaintiffs allege that Defendants' Cosby Fun products have "areas on the top of the front side . . . shaped in an arc and resemble cartoon hair."  Compl. ¶ 55.  They further allege that "[t]he blue version has an arrowhead-shaped cutout on the right side of the blue area, suggesting side parted hair[, and] [t]he pink version has a round cutout in the middle of the blue area, suggesting bangs," and allege that this is similar to the cartoon hair from the King Egg and Happy Egg suites.  *Id.*



Compl. Exs. A, B, E (Defendants' products seen on left and Plaintiffs' on right). Even if these allegations sufficed to allege protectable elements, which they do not, as a matter of law, these works could not be substantially similar.  At the most,

1 | Plaintiffs own a thin copyright for the hair design on their eggs, which provides
2 | protection "against only virtually identical copying." *Pretty in Plastic, Inc.*, 793 Fed.
3 | Appx. at 594 (quoting *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003)); *Milkcrate*
4 | *Ath., Inc. v. Adidas Am., Inc.*, No. 21-cv-09328, 2022 U.S. Dist. LEXIS 152654, at
5 | *10-12, 15-16 (C.D. Cal. Aug. 4, 2022) (Slaughter, J.). But here there are great
6 | differences between the two works—namely, Defendants' use of an "arc" on the top
7 | of the eggs does not remotely look like the hair on Plaintiffs' works, and, as such
8 | constitute "disparities that no ordinary observer of the two works would be disposed
9 | to overlook." *Rentmeester*, 883 F.3d at 1122. Plaintiffs' copyright claim therefore
10 | should be dismissed for failure to plead substantial similarity.

### D. DEFENDANTS' MOTION TO STRIKE SHOULD BE GRANTED

Defendants' moving memorandum indicated why certain paragraphs of Plaintiffs Complaint should be stricken under Fed. R. Civ. P. 12(f) as immaterial and impertinent. Mov. Mem. at 17-18. In opposition, Plaintiffs have failed to articulate why such unproven allegations are relevant to this dispute. For example, their citation of *Trovan, Ltd. v. Pfizer, Inc.*, No. 98-cv-0094, 2000 U.S. Dist. LEXIS 7522 (C.D. Cal. May 25, 2000) is inapposite. In that case, the court found injury to plaintiff based upon defendant associating plaintiff's marks with defendant's products "which had been linked to multiple deaths." *Id.* at *28, 39. But in Paragraphs 41, 44, 50, and 93, Plaintiffs set forth allegations not regarding their own marks, but other third-party marks, and Plaintiffs have made no claim as to how such allegations, if they could even be proven, could suffice to show injury to them. Accordingly, the motion to strike should be granted.

## II. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss and strike.

[*Signature Block on Next Page*]

|  |  |  |
|---|---|---|
| 1 | Dated: December 9, 2022 | Respectfully submitted, |
| 2 | | |
| 3 | | COWAN, LIEBOWITZ & LATMAN, P.C. |

By: _____
Kieran G. Doyle (admitted pro hac vice)
Joelle A. Milov (admitted pro hac vice)
Jeremy A. Berman (admitted pro hac vice)
114 West 47th Street
New York, New York 10036-1525
(212) 790-9200

JASSY VICK CAROLAN LLP
Jean-Paul Jassy
Jeffrey A. Payne
355 South Grand Avenue, Suite 2450
Los Angeles, California 90071

*Attorneys for Defendants Zest US Wholesale, Inc., Zest US, Adil Al Hourani, Omar Al Hourani, KGR Distribution Corp., Ravi Kommi, and Shims Bargain, Inc. d/b/a JC Sales*