UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IMEX LEADER, INC. ET AL.,<br><br>   Plaintiffs,<br><br> vs.<br><br>ZEST US WHOLESALE, INC. ET AL.,<br><br>   Defendants. | Case No. 22-cv-01432-FWS-JDE<br><br>**RESPONSE OF THE REGISTER OF COPYRIGHTS TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)** |

On September 20, 2023, pursuant to 17 U.S.C. § 411(b)(2), the Court requested advice from the Register of Copyrights (the "Register") on the following question:

> Whether the disclosure of copyrighted visual works included on the applications for Copyright Registration No. VAu001405148, Copyright Registration No. VAu001405147, Copyright Registration No. VAu001406848 and Copyright Registration No.

1

RESPONSE OF THE REGISTER OF COPYRIGHTS

EXHIBIT A

1  VAu001405142 as "unpublished" when those works were
2  previously "published" as a factual matter would, if known
3  to the Register, have caused the Register to refuse
4  registration.[1]

5  The Register hereby submits her response. Based on the legal standards and
6  examining practices set forth below, the U.S. Copyright Office ("Copyright
7  Office" or "Office") would have refused to register the works as part of a group
8  registration for unpublished works ("GRUW"), the registration option through
9  which they were registered. Moreover, because these works were ineligible for
10 registration as part of a GRUW, a supplementary registration could not correct this
11 error.

## BACKGROUND

### I. Examination History

A review of the records of the Copyright Office reveals that on June 14, 2020, the Office received four GRUW applications for a group of two-dimensional art works. The first application, titled "King Egg 'Beauty' and 9 Other Unpublished Works," comprised ten illustrations. The application identified Irina Grant as the sole author of, and copyright claimant for, all ten illustrations. The application stated that the illustrations were completed in 2018 and that they were unpublished. Based on the representations that all ten illustrations were unpublished and created by the same author who is also named as the copyright claimant, the Office registered them as a group of unpublished works on

---

[1] Order Granting Defs.' Mot. for Issuance of Req. to the Reg. of Copyrights Pursuant to 17 U.S.C. § 411(b)(2) at 10 (Sept. 20, 2023) ("Order"), ECF No. 84.

September 9, 2020, under registration number VAu001405142 with an effective date of registration ("EDR")[2] of June 14, 2020.

The second application, titled "King Egg 'Snoopy' and 3 Other Unpublished Works," comprised four illustrations. The application identified Irina Grant as the sole author of, and copyright claimant for, all four illustrations. The application stated that the illustrations were completed in 2018 and that they were unpublished. Based on the representations that all four illustrations were unpublished and created by the same author who is also named as the copyright claimant, the Office registered them as a group of unpublished works on September 9, 2020, under registration number VAu001405147 with an EDR of June 14, 2020.

The third application, titled "Magik Egg 'Autumn' and 9 Other Unpublished Works," comprised ten illustrations. The application identified Irina Grant as the sole author of, and copyright claimant for, all ten illustrations. The application stated that the illustrations were completed in 2018 and that they were unpublished. Based on the representations that all ten illustrations were unpublished and created by the same author who is also named as the copyright claimant, the Office registered them as a group of unpublished works on September 9, 2020, under registration number VAu001405148 with an EDR of June 14, 2020.

Finally, the fourth application, titled "Skazka Egg 'Pinokio' and 8 Other Unpublished Works," comprised nine illustrations. The application identified Irina Grant as the sole author of, and copyright claimant for, all nine illustrations. The application stated that the illustrations were completed in 2019 and that they were unpublished. Based on the representations that all nine illustrations were

---

[2] The EDR is the date that the Office received a completed application, the correct deposit copy, and the proper filing fee.  17 U.S.C. § 410(d).

unpublished and created by the same author who is also named as the copyright claimant, the Office registered them as a group of unpublished works on September 25, 2020, under registration number VAu001406848 with an EDR of June 14, 2020.

The Office had no reason to question the representations in any of the applications and accepted them as true and accurate.

## II. The Court's Request

In this case, Plaintiffs Imex Leader, Inc. and Irina Grant (collectively, "Plaintiffs") allege that Defendants Zest US Wholesale, Inc., Zest US, Adil Al Hourani, Omar Al Hourani, KGR Distribution Corp., Ravi Kommi, and Shims Bargain, Inc. d/b/a JC Sales (collectively, "Defendants") infringed their copyrights in illustrations registered under numbers VAu001405148, VAu001405147, VAu001406848, and VAu001405142 (collectively, the "Registrations").[3] Defendants challenged the validity of the Registrations, arguing that Grant knowingly provided materially false information to the Office by registering the illustrations using GRUW applications, even though they had previously been published.[4]

Registration (or a refusal to register) is a prerequisite for bringing an infringement action involving a U.S. work and for the availability of certain remedies under the Copyright Act.[5] Pursuant to section 411(b)(1) of the Act, even

---

[3] Order at 1 (citing Second Am. Compl. ¶¶ 2, 16–17, 30–34 (May 19, 2023), ECF No. 58).

[4] Defs.' Notice of Mot. and Mot. for Issuance of Req. to Reg. of Copyrights Pursuant to 17 U.S.C. § 411(b)(2) at 3–8 (July 6, 2023), ECF No. 63.

[5] 17 U.S.C. § 411 ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made."); *id.* § 412 (discussing available damages).

a certificate of registration that includes inaccurate information satisfies this requirement unless:

> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
>
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.[6]

Defendants filed a motion with the Court, arguing that Grant included inaccurate information on the registration applications with knowledge that it was inaccurate.[7] Defendants further asked the Court to request that the Register advise it as to whether the inaccurate information, if known, would have caused the Register to refuse registration.[8] Section 411(b)(2) requires courts to seek such guidance in "any case in which inaccurate information described [in § 411(b)(1)] is alleged."[9]

On September 20, 2023, the Court granted Defendants' motion. The Court concluded that "the record supports a finding [that Grant] was willfully blind in failing to disclose the copyrighted works in Registration Nos. VAu001405148, VAu001405147, VAu001406848, and VAu001405142 were previously

---

[6] 17 U.S.C § 411(b)(1).

[7] Defs.' Notice of Mot. and Mot. for Issuance of Req. to Reg. of Copyrights Pursuant to 17 U.S.C. § 411(b)(2) at 3–8.

[8] 17 U.S.C. § 411(b)(2).

[9] *Id.* ("[T]he court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration"). Although permissible, a motion by a party is not required.

published."[10]  Specifically, the Court found that Grant had previously registered published works without any confusion and that, even if she did fail to understand the meaning of "published," she did not avail herself of the resources provided by the Copyright Office.[11]

Finding that the conditions set forth in 17 U.S.C. § 411(b)(2) had been met, the Court also granted Defendants' motion to refer the above question to the Register to consider whether the inaccuracies identified in the applications would have caused the Register to refuse registration.[12]

## ANALYSIS

### I. Relevant Statutes, Regulations, and Agency Practices

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 408(d), 409, and 410. Regulations governing applications for registration are codified at 37 C.F.R. §§ 202.1 to 202.24.  Further, principles that govern how the Office examines registration applications are set out in the *Compendium of U.S. Copyright Office Practices*, an administrative manual that instructs agency staff regarding their statutory and regulatory duties and provides expert guidance to copyright applicants, practitioners, scholars, courts, and members of the general public regarding Office practices and related principles of law.  The Office publishes periodic revisions to the *Compendium* to provide additional guidance where necessary and to reflect changes in the law or Office practices; these revisions are

---

[10] Order at 6, 9.
[11] *Id.* at 6–8.  Due to an apparent oversight, neither the Order nor a separate request was transmitted to the Office when the Order issued.  The Office first received notification of the Order on February 6, 2024.
[12] *Id.* at 10.

made available for public comment prior to finalization. Because Grant filed her registration applications in 2020, the governing principles the Office would have applied to evaluate the applications are set forth in the version of the third edition of the *Compendium* ("COMPENDIUM (THIRD)") that was released in September 2017.[13] In 2021, the Office published a revised version of the COMPENDIUM (THIRD); any supplementary registration application filed today would be subject to the practices set forth in this current edition.[14]

### A. Publication

The statutory provisions governing copyright registration dictate that "if the work has been published," an application for registration shall include "the date and nation of its first publication."[15] The Copyright Act defines "publication" as:

> [T]he distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication.[16]

---

[13] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2017) ("2017 COMPENDIUM (THIRD)"), https://www.copyright.gov/comp3/2017version/docs/compendium.pdf.

[14] U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES (3d ed. 2021) ("2021 COMPENDIUM (THIRD)"), https://copyright.gov/comp3/docs/compendium.pdf.

[15] 17 U.S.C. § 409(8).

[16] *Id.* § 101 (defining "publication").

The COMPENDIUM (THIRD) explains that "publication occurs when one or more copies or phonorecords are distributed to a member of the public who is not subject to any express or implied restrictions concerning the disclosure of the content of that work."[17]  For example, "[s]elling a product with copyrightable artwork on the packaging and label constitutes publication of that artwork."[18]  Likewise "[l]ending, renting, or leasing copies of a work constitutes publication of that work."[19]

But distribution is not always required.  The mere "offering" of copies of a work to "a group of persons" for "further distribution, public performance, or public display" constitutes publication, even if distribution has not occurred.[20]  For example, the COMPENDIUM (THIRD) explains that "[p]ublication occurs when copies of a photograph are offered to stock photography agencies for the purpose of licensing those copies to newspapers, magazines, and websites."[21]

### B.     Registration Requirements for a GRUW

The Copyright Act authorizes the Register of Copyrights to issue regulations permitting "a single registration for a group of related works."[22]  On March 15,

---

[17] 2017 COMPENDIUM (THIRD) § 1905.1.

[18] Id.

[19] Id.  The current version of COMPENDIUM (THIRD) adds that "[t]ransmitting a copy of an illustration to a client constitutes publication of that work, if the copyright owner authorized the client to use that image and did not impose any restrictions on the client's ability to disclose that work to the public."  2021 COMPENDIUM (THIRD) § 1905.1.

[20] 2017 COMPENDIUM (THIRD) § 1906.1.

[21] Id.  The current version of COMPENDIUM (THIRD) adds that "[p]ublication occurs when copies of a photograph are offered to clients . . . with a license permitting further distribution or display of the photograph."  2021 COMPENDIUM (THIRD) § 1906.1.

[22] 17 U.S.C. § 408(c)(1).

2019, the Office issued a regulation providing that "a group of unpublished works may be registered . . . with one application."[23]  Among other requirements, 37 C.F.R. § 202.4(c) states that "[a]ll the works in the group must be unpublished," that "the applicant may include up to ten works in the group," that "[t]he applicant must provide a title for each work in the group," and that "[a]ll the works must be created by the same author or the same joint authors, and the author and claimant information for each work must be the same."[24]  To register a work using the GRUW application, the applicant must (1) complete the online application, (2) pay the filing fee, and (3) upload a complete copy of each work in a separate electronic file.[25]  The regulations do not provide an option for group registration of published visual arts works other than photographs.[26]

      **C.**     ***The Role of Supplementary Registration***

The Office recognizes that there may be a need for a registrant to correct certain errors or provide additional information after the Office has issued a registration.  It therefore permits registrants to file an application for a supplementary registration to correct certain errors or amplify the information provided in the original registration.[27]  The availability of a supplementary registration to correct errors is limited, however.  According

---

[23] *Group Registration of Unpublished Works*, 84 Fed. Reg. 3693 (Feb. 13, 2019) (codified at 37 C.F.R. § 202.4(c)).
[24] 37 C.F.R. § 202.4(c)(1), (2), (4), (5).
[25] *Id.* § 202.4(c), (c)(8)–(9).
[26] *See generally id.* § 202.4.  The Office recently published a notice of proposed rulemaking to create a group option for registering published two-dimensional artwork.  *See Group Registration of Two-Dimensional Artwork*, 89 Fed. Reg. 11789 (Feb. 15, 2024).  No final regulation has been issued.
[27] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; 2021 COMPENDIUM (THIRD) § 1802.

to the COMPENDIUM (THIRD), "[w]hen the Office registers multiple works under a registration accommodation," such as a group registration, "it will not accept an application that seeks to reclassify the works under a different accommodation."[28] Accordingly, the COMPENDIUM (THIRD) specifies that a supplementary registration cannot be "used to transform a registration for an unpublished collection or a group of unpublished works into a registration for a single published work."[29] Such a change "would alter the fundamental nature of the claim, and would undermine the legal presumptions afforded to the initial examination of the works."[30] Moreover, these types of changes "would be inconsistent with the statutory and regulatory provisions stating that a supplementary registration augments—but does not supersede—the basic registration."[31]

## REGISTER'S RESPONSE TO THE COURT

Based on the foregoing statutory and regulatory standards and the Office's examining practices, the Register responds to the Court's question as follows:

If the Office knew that the visual works included in the four GRUW applications had been previously published, it would not have issued the Registrations.[32] As explained above, one of the requirements for using the GRUW application is that "[a]ll the works in the group must be unpublished."[33] In court filings, Defendants asked Plaintiffs to provide "'the date, if any' the 33 works

---

[28] 2021 COMPENDIUM (THIRD) § 1802.4.
[29] Id.
[30] Id.
[31] Id. (citing 17 U.S.C. § 408(d); 37 C.F.R. § 202.6(f)(2)).
[32] The Office accepts the Court's findings as stated in the Order and makes no determination about whether the distribution in fact amounted to a publication.
[33] 37 C.F.R. § 202.4(c)(1).

underlying Registration Nos. VAu001405148, VAu001405147, VAu001406848, and VAu001405142 'were first distributed to the public.'"[34] In response, Plaintiffs listed January 4, 2017, April 1, 2017, and January 7, 2019, as the applicable dates.[35] If the registration specialist knew that such distributions amounted to "publication[s]" under the Copyright Act, he or she would have refused registration and advised Grant to register each published work separately.[36]

Moreover, a supplementary registration could not correct this deficiency.[37] As noted above, the Office will not accept an application that seeks to transform a registration for "a group of unpublished works into a registration for a single published work."[38]

## CONCLUSION

After review of the available facts in this action and application of the relevant law, regulations, and the Office's practices, the Register hereby advises the Court that had the Office been aware that the visual works included in the applications were previously published, it would not have issued the Registrations. Moreover, the Office would not accept a supplementary registration filed by Plaintiffs to correct the error.

Dated: May 13, 2024

*Shira Perlmutter*
**Shira Perlmutter**
Register of Copyrights and Director
of the U.S. Copyright Office

---

[34] Order at 4 (quoting Pls.' Objs. and Resps. to Defs.' Second Set of Interrogs. at 6–8 (July 6, 2023), ECF No. 64-1).
[35] *Id.* (quoting Pls.' Objs. and Resps. to Defs.' Second Set of Interrogs. at 6–8).
[36] *See* 2017 COMPENDIUM (THIRD) § 1104.3.
[37] 2021 COMPENDIUM (THIRD) § 1802.4.
[38] *Id.*